IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MICHAEL T. McKEE                                                           PLAINTIFF

V.                                                     CIVIL ACTION NO.1:07CV001-SAA

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                            DEFENDANT

**MEMORANDUM OPINION**

  This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Michael T. McKee for supplemental security income (SSI) benefits under Title XVI of the Social Security Act. Plaintiff's applications were denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on April 25, 2006, and in a decision dated April 26, 2006, the ALJ found that the plaintiff was not disabled as defined by the Social Security Act. The Appeals Council denied the plaintiff's request for review, and this case is now ripe for review. In accordance with the provisions of 28 U.S.C. § 636(c), both parties have consented to have a magistrate judge conduct all the proceedings in this case; thus, the undersigned has the authority to issue this opinion and the accompanying final judgment.

1

# I. FACTUAL AND PROCEDURAL HISTORY

The plaintiff was born on April 17, 1959. He completed the tenth grade with special education classes and has past relevant work experience as an assembly line supervisor and delivery person. He filed his current application for benefits on April 25, 2003 alleging a disability commencing on April 9, 2003, due to chronic obstructive pulmonary disease (COPD), emphysema, asthma, swelling of the feet and legs, and high blood sugar. In the hearing decision dated April 26, 2006, the ALJ found that the plaintiff retains the residual functional capacity ("RFC") to perform a range of light work. (Tr. 20, Finding No. 5). Specifically the ALJ found that the plaintiff can lift 20 pounds occasionally and 10 pounds frequently; he can stand and walk for 6 hours and can sit for 6 hours in an 8-hour work day, but he requires a sit/stand option; he has postural limitations in that he may only occasionally engage in climbing, balancing, stooping, crouching, kneeling or crawling; and on the average of ten days of a month when he cannot obtain his pulmonary medications, he has environmental restrictions of temperature extremes, humidity, chemicals, dust and fumes. (Tr. 18).

The plaintiff argues that the ALJ erred by not considering the effect of plaintiff's obesity when determining his RFC and on his respiratory impairments. Further, says plaintiff, the ALJ erred in giving weight to the opinions of non-examining medical experts who simply reviewed plaintiff's file and medical records opinions in determining his RFC while discounting the opinions of treating physicians and the consultative examining physician who actually had an opportunity to personally examine the plaintiff.

In determining disability, the Commissioner, through the ALJ, works through a five-step

sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's RFC, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he

---

[1] *See* 20 C.F.R. § 416.920 (1998).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. § 404.920(b).

[4] 20 C.F.R. § 404.920(c).

[5] 20 C.F.R. § 404.920(d). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.925.

[6] 20 C.F.R. § 404.920(e).

[7] 20 C.F.R § 404.920(f)(1).

cannot, in fact, perform that work.[8]

In the instant case the ALJ initially found that the plaintiff suffers from "severe" impairments including "COPD, obesity, a history of diabetes and thrombocytopenia due to alcohol abuse". (Tr. 19, Finding No. 2). However, he concluded the impairments did not meet or equal one of the listed impairments in Appendix 1 to the Regulations. (Tr. 19, Finding No. 3). The ALJ discussed the medical evidence of record and concluded that the plaintiff retains sufficient RFC to perform a range of light work; he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can stand and walk for 6 hours and can sit for 6 hours in an 8-hour work day, but he requires a sit/stand option; he has postural limitations in that he may only occasionally engage in climbing, balancing, stooping, crouching, kneeling or crawling; and he experiences environmental restrictions of temperature extremes, humidity, chemicals, dust and fumes . (Tr. 18).

In making his determination, the ALJ used both the Medical-Vocational Guidelines and the testimony of a Vocational Expert ("VE") to conclude that the plaintiff's RFC allowed him to find work as an assembler of small parts and as a wire cutter. (Tr. 19). In making his determination the ALJ noted that he afforded "limited weight to the formal assessment of Dr. Lodhi . . . " as "[n]either the limited findings contained within his own consultative examination nor the remainder of the documentary record substantiates anything approaching this draconian assessment."[9] (Tr. 18). The ALJ further stated that,

---

[8] *Muse*, 925 F.2d at 789.

[9] Dr. Lodhi is a consultative examining physician. In his formal assessment of the plaintiff, Dr. Lodhi assessed the plaintiff as having the ability to stand and walk for less than 10 minutes in an 8-hour work day, and only less than 1 minute without interruption. (Tr. 215). This

> The undersigned has considered the repeated opinions of the State agency medical consultants . . . to the effect that the claimant experiences no "severe" physical impairments. The State agency consultants lacked the benefit of the hearing testimony and the most recent objective medical evidence. Their opinions, however, appear generally consistent with the preponderance of the record evidence to the extent that they find the claimant not disabled, and the undersigned accordingly affords them some weight.

(Tr. 18).

## II. STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further defined that substantial evidence:

> must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court

---

is the "draconian assessment' to which the ALJ refers.

5

may not re-weigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## III. DISCUSSION

### A. ALJ's Evaluation of Medical Opinions contained in the Record

The plaintiff argues that the ALJ erred in placing greater weight upon the findings of state agency physicians rather than the findings of a consulting examiner. According to plaintiff, the ALJ's decision ignores the pulmonary function test performed the day that plaintiff was evaluated by Dr. Lodhi, and the ALJ offers no reason for doing so. While the plaintiff concedes that the ALJ explains why he affords Dr. Lodhi's opinion limited weight, he nevertheless contends that the ALJ should have explained why the pulmonary function test is not relevant or why it had no impact on the ALJ's decision.

In response to the plaintiff's argument, the government states, "It is true that the regulations state that the Agency generally gives more weight to the opinion of a source that has examined a claimant over a source that has not examined him. . . . the regulation also states that consistency is an important factor in the weight to be given an opinion." Memorandum in Support of the Commissioner's Decision, p. 12 - 13, *citing* 20 C.F.R. § 416.927. Further, the government concedes that "the ALJ's decision would have been more complete had he explicitly

considered this evidence [the pulmonary study performed by Dr. Lodhi], the ALJ was still correct in noting that the extreme limitations outlined by Dr. Lodhi were not supported by the medical record." Memorandum in Support of the Commissioner's Decision, p. 13.

Pursuant to 20 C.F.R. § 402.35, Social Security Rulings "represent final opinions and orders and statements of policy and interpretations" which are adopted by the Social Security Administration and "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35 (b)(1). Social Security Ruling 96-8p provides that when determining a RFC, the ALJ "must always consider and address medical source opinions." SSR-96-8p, p.7. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* Social Security Ruling 96-5 further states that "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." SSR-96-5, p.2. "[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored." *Id.* at p. 3. Thus, when making a determination regarding an RFC, which is exclusively within the purview of the ALJ, the regulations require that medical source opinions, particularly from medical sources that have actually examined the individual, be carefully considered and when necessary, the ALJ must "make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear. . . ." *Id.* at p. 2.

In the instant case, it is clear that the ALJ was at least perplexed by Dr. Lodhi's assessment that the plaintiff could not stand and walk for more than ten minutes in an entire 8-hour work day. (Tr. 16, 18). Because there is no statement from the ALJ regarding the

7

pulmonary test performed by Dr. Lodhi, the court is not able to determine whether the test was considered by the ALJ or, as the plaintiff argues, ignored. Moreover, Dr. Lodhi states very clearly in his report and assessment that upon physical examination plaintiff's lung expansion was decreased, that wheezing and rhonchi were present, that there was poor air entry, (Tr. 212) that his diagnoses were confirmed by objective findings and that his opinions were not based primarily on the plaintiff's subjective complaints. (Tr. 216). Accordingly, the court concludes that the decision by the ALJ should be reversed and remanded for further consideration of the opinion of the medical opinions of Dr. Lodhi, and if necessary, for clarification by Dr. Lodhi, of his assessment of the plaintiff.

  B. <u>Consideration of the Effects of Obesity on Plaintiff's RFC</u>

The plaintiff also argues that the ALJ's decision fails to address the plaintiff's obesity and the Social Security Ruling 02-1p related thereto. SSR-02-1p; *See also* 20 C.F.R., Part 404, Subpart P, App. 1, Listing 9.09 (1999). According to the plaintiff, this failure by the ALJ necessitates reversal of the ALJ's decision. The defendant responds that the plaintiff did not allege disability due to obesity. Further, the defendant states that as the ALJ did find the plaintiff's obesity was an impairment, it is clear that he considered the condition in determining the claimant was not disabled.

Previously, obesity was contained in the regulations as a listed impairment. Effective October 25, 1999, Listing § 9.09 regarding obesity was deleted from the Listing of Impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1.[10] The Social Security Administration determined

---

[10]Prior to October 25, 1999, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing § 9.09 read as follows:
 9.09 Obesity. Weight equal to or greater than the values specified in Table I for males,

8

that because of the widely varying effects obesity and related impairments may have on an individual's functioning, the only way the Administration could be confident that individuals would be disabled under the listings would be to require the other impairments to meet or equal the severity of their respective listings. *Wooten v. Apfel*, 108 F. Supp 2d 921, 924 (E.D. Tenn. 2000). Section 9.09 was deleted because, according to the Commissioner's final rule, the Listing § 9.09 criteria "did not represent a degree of functional limitations that would prevent an individual from engaging in any gainful activity." 64 Fed. Reg. at 46123. The Administration has not removed obesity as a consideration in determining disability, however, and has added guidance about the evaluation of claims for benefits involving obesity to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings. The purpose in making the changes regarding Listing § 9.09 was to ensure that adjudicators understand that the Administration considers obesity to be a medically determinable impairment that can be the basis for a finding of a disability, and that obesity in combination with other impairments must be

---

Table II for females (100 percent above desired level), and one of the following:

> A. History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination) associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine; or
> B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or
> C. History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; or
> D. Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight bearing and persistent edema; or
> E. Respiratory disease with total forced vital capacity equal to or less than 2.0 L. or a level of hypoxemia at rest equal to or less than the values specified in Table III-A or III-B or III-C. . . .

9

considered when evaluating disability at the listings step and other steps of the sequential evaluation process. 64 Fed. Reg. 46122, 46123. Thus, new paragraphs 20 C.F.R. Subpart P, Pt. 404, Appendix 1, § 1.00F. (musculoskeletal system), 3.00I. (respiratory system), and 4.00F. (cardiovascular system) have been added to the prefaces to the listings for the body systems named. Each of these new paragraphs contains the same language as follows:

> Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the respiratory system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

64 Fed. Reg. 46122, 46128-46129. The new rules took effect in October, 1999. *See* 64 Fed. Reg. 46122, 46127. Since that time the Social Security Administration has released at least two Social Security Rulings, 00-3p and 02-3p, which provide the manner in which obesity should be considered. According to these rulings, "[o]besity can cause limitation of function." SSR-02-1p, p. 6. An obese individual may have limitations "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling." Further, obesity "may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching." *Id.* Finally, "[t]he ability to tolerate extreme heat, humidity, or hazards may also be affected." *Id.* The ruling also acknowledges that often obesity may affect an individual in a less than obvious manner -- "[f]or example, some people with obesity also have sleep apnea [a condition from which the plaintiff apparently suffers (Tr. 122, 212)]." *Id.* Therefore the regulation requires an ALJ to

10

assess the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment as well as his ability to sustain a function over time.

An RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, taking into account fatigue, or other combined effects of obesity which with other impairments, may be greater than might be expected without obesity. SSR - 02-1p, p.6. In the instant case the ALJ appears to have considered the plaintiff's obesity, as he found it to be one of the impairments that the plaintiff suffers. (Tr. 19, Finding No. 2). However, the ALJ failed to address this impairment in detail nor did he elaborate as to the effects the impairment may have in combination with the plaintiff's other impairments. The combined effects of obesity and other of the plaintiff's impairments clearly could, as the plaintiff argues, impact his ability to work. In the evaluation of this case on remand, the ALJ should consider and provide details regarding the effect of plaintiff's obesity on his ability to work.

After reviewing the ALJ's decision, the court is unable to conclude that the ALJ followed all necessary regulations; nor did he provide, in his written decision, details regarding his consideration of all the combined effects of plaintiff's impairments. The specific grounds for the findings contained within the ALJ's decision are integral to a determination of whether the ALJ's decision was supported by substantial evidence, and an ALJ is bound by the rules and policies of the Social Security Administration. Therefore, the undersigned finds that decision of the Commissioner should be remanded for further proceedings in accordance with this opinion. Because the court remands this action to the ALJ for further consideration, it is not necessary to

address the merits of the plaintiff's remaining arguments at this time.

## V.  CONCLUSION

A final judgment in accordance with this memorandum opinion shall issue this day.

This, the 11th day of December, 2007.

                                                        /s/ S. ALLAN ALEXANDER  
                                               UNITED STATES MAGISTRATE JUDGE